UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN  DIVISION

_____

NAPOLEON HARTSFIELD,

                    Plaintiff,                              Case No. 1:16-cv-1135

v.                                                          Honorable Robert J. Jonker

LARRY STELMA et al.,

                    Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*.[1]  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

_____

[1]Plaintiff has "three-strikes" within the meaning of 28 U.S.C. § 1915(g).  Nevertheless, because Plaintiff is on parole, and no longer a prisoner, the three-strikes provision does not preclude him from proceeding *in forma pauperis* in this action.

### Factual Allegations

Plaintiff currently is on parole, but the events giving rise to his action occurred while he was a pre-trial detainee at the Kent Court Jail in May and June of 2015.  In his *pro se* complaint, Plaintiff sues Kent County, Sheriff Larry Stelma, Deputy D. Signs, Sergeant (unknown) Frederick and Lieutenant (unknown) Kraai.

Plaintiff alleges that while he was sitting at a table talking to another prisoner about filing a lawsuit against the jail concerning medical care, Defendant Signs told him, "go lock down, you can't talk to other inmates about the law and be (5) five at a table."  (Compl., ECF No. 1, PageID.5.)  Signs locked Plaintiff in his cell for three days without writing a misconduct report, which prompted Plaintiff to write a grievance against him.  On May 28, 2015, Signs locked Plaintiff in his cell because Plaintiff refused to follow the jail's policy of having inmates clean the windows.  Plaintiff claims that Signs locked him in his cell nine separate time for three consecutive days because Plaintiff would not clean the jail.  Plaintiff contends that requiring him to assist with cleaning the jail constituted involuntary servitude in violation of the Thirteenth Amendment.

Plaintiff claims that while he was sleeping in his cell on June 1, 2015, Defendant Signs kicked his cell door very hard and yelled to ask Plaintiff whether he wanted his medication.  Plaintiff just looked up at Signs and went back to sleep.  Signs allegedly called Plaintiff a "nigger" and stated that Plaintiff would be "timed in" for the rest of the day.  (*Id*.)  Plaintiff told Signs that he was going to grieve him.  Later that day, Signs told Plaintiff over his cell intercom to "pack your shit Hartsfield cause if I do it you're not going to like it."  (*Id*. at 6.)  Defendant Signs, who was holding a can of mace, and two other deputies opened Plaintiff's cell door and told him to come out.  Plaintiff alleges, "There were no supervisors present, therefore giving Deputy D. Signs the mace

allowed him to retaliate and to carry out his threats." (*Id*.)  Plaintiff was handcuffed and taken to the Disciplinary Restrictive Unit (DRU).  After Plaintiff informed staff that he was contemplating suicide, he was placed in a suicide observation cell.  Plaintiff alleges that the conditions in the suicide cell were very restrictive, e.g., "lights on 24 hours a day, no exercise out of cell or sun shine, no showers, no phone, no visits, no change of underwear, no law library . . . ." (*Id*. at 7.)  The conditions were the same in the DRU cell where Plaintiff was placed for 10 days after his release from the observation cell.

On June 2, 2015, Defendant Frederick held a hearing on a major rule violation charge that Defendant Signs had written against Plaintiff on June 1 for hindering, opposing or interfering with a staff member.  Plaintiff claims that Frederick violated his due process rights by not providing Plaintiff with a copy of the rule violation or the findings of fact to support her finding of guilt.  Plaintiff was sanctioned with 10 days of lock down.  Defendant Kraai denied Plaintiff's appeal.  Plaintiff further alleges that Defendants Stelma and Kent County have a policy or custom of denying inmates written notice of rules violations and findings of fact.

The following day, Plaintiff received his legal property that had been packed up by Defendant Signs.  Plaintiff alleges that some of his legal property was missing, including 24 civil rights complaint forms that Plaintiff planned to use to file a lawsuit against medical staff at the jail. Plaintiff further alleges that, because Signs destroyed his legal papers, he could not represent himself in his criminal case and had to plead guilty to possession of drugs with intent to deliver instead of filing a motion to dismiss for lack of jurisdiction.  Plaintiff seeks injunctive relief, as well as monetary damages.

## Discussion

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr.*

- 4 -

*Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

I.      **Cell Confinement and Conditions**

Plaintiff alleges that Defendant Signs locked him in his cell ten separate times for three consecutive days without charging him with a misconduct or otherwise providing him with due process.  Plaintiff further claims that, after he informed staff that he was contemplating suicide, he was placed in a suicide observation cell with very restrictive conditions, e.g., "lights on 24 hours a day, no exercise out of cell or sun shine, no showers, no phone, no visits, no change of underwear, no law library . . . ." (*Id*. at 7.)  The conditions were the same in the DRU cell where Plaintiff was held for 10 days after his release from the observation cell.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).  To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  Analysis of a procedural due process claim involves two steps:  "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."  *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner.  *See Meachum v. Fano*, 427 U.S. 215, 225 (1976).

In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause.  According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).  The *Sandin* Court concluded that mere placement in administrative segregation for 30 days did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship.  *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).  Relying on *Sandin*, the Sixth Circuit has held that brief periods of cell confinement are not an atypical and significant hardship within the meaning of *Sandin*.  *See Green v. Waldren*, No. 99–1561, 2000 WL 876765 (6th Cir. June 23, 2000) (two-day sentence of "toplock" does not amount to an atypical or significant hardship); *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant); *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (14 days of loss of privileges is not an atypical, significant deprivation).

In light of the foregoing, Plaintiff's confinement to his cell ten times for three consecutive days for a total of 30 days did not impose an atypical and significant hardship under *Sandin*.  Likewise, the conditions imposed upon Plaintiff during his brief confinement in the suicide observation cell, which was warranted after Plaintiff admittedly reported to staff that he was suicidal, and his 10-day stay in the DRU cell did not implicate the due process clause.  Plaintiff, therefore, fails to state a due process claim.

The conditions of Plaintiff's confinement in the suicide and DRU cells also fail to state an Eighth Amendment claim.[2]   The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.

Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'"  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. 337, 347 (1981); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999).  Although it is clear that Plaintiff was denied certain privileges as a result of his administrative segregation, he does not allege or show that he was denied basic human needs and requirements.  The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish

---

[2]In *Richko v. Wayne Cty.*, No. 15-1524, slip op. at 8-9 (6th Cir. Apr. 15, 2016), the Sixth Circuit continued to hold that pretrial detainees protected by the Fourteenth Amendment are governed by the same deliberate-indifference standard as prisoners who are protected by the Eighth Amendment.

an Eighth Amendment violation.  *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).  Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U.S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795.  As a result, Plaintiff fails to state an Eighth Amendment claim.

## II.    **Involuntary Servitude**

Plaintiff alleges that in light of his status as a pretrial detainee, requiring him to clean windows at the jail constitutes involuntary servitude in violation of Thirteenth Amendment.  To state a claim under the Thirteenth Amendment, a plaintiff must demonstrate he was subjected to "compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results"  *Butler v. Perry*, 240 U.S. 328, 332 (1916).  An inmate's pretrial status does not preclude a prison or jail from requiring the inmate to perform general housekeeping responsibilities consistent with the Constitution.  *See, e.g., Ali v. Johnson*, 259 F.3d 317, 317-18 (5th Cir. 2001) (inmates sentenced to incarceration cannot state a viable Thirteenth Amendment claim if the prison system requires them to work); *Tourscher v. McCullough*, 184 F.3d 236, 242 (3d Cir. 1999) (finding pretrial detainees can be required to perform basic housekeeping functions); *Bijeol v. Nelson*, 579 F.2d 423, 424 (7th Cir. 1978) ("Daily general housekeeping responsibilities" are not inherently punitive and do not violate either the Due Process Clause or the Thirteenth Amendment's ban on involuntary servitude)*; Eberle v. Wilkinson*, No. 2:03-CV-272, 2010 WL 4918780, at*7 (S.D. Ohio Nov. 24, 2010); *McGarry v. Pallito*, No. 1:09-CV-128, 2010 WL 679056 (D. Vt. Feb. 27, 2010) (requiring pretrial detainee to work in prison laundry or distribute prison food does not violate Thirteenth Amendment); *Ford v. Nassau County Executive*, 41 F. Supp. 2d 392, 397 (E.D.N.Y.

1999) (requiring pretrial detainee to serve as a food cart worker did not implicate the Thirteenth Amendment). Consequently, Plaintiff's allegations do not rise to the level of the Thirteenth Amendment violation.

III.    **Racial Slur**

Defendant Signs' alleged use of vulgar language and racial slurs does not rise to the level of a constitutional violation. Although harassment and verbal abuse are not condoned by the courts and should not be tolerated by correctional authorities, allegations regarding this type of abuse do not present a constitutional violation. *Ivey*, 832 F.2d at 954; *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *2 (6th Cir. Feb. 1, 1996); *Green v. Hill*, No. 94-1851, 1995 WL 764119 at *1 (6th Cir. Dec. 27, 1995). The use of insulting racial slurs is also insufficient to support a constitutional claim. See *Jones Bey v. Johnson*, 248 F. App'x 675, 677-78 (6th Cir. 2007) (prison guard's use of racial slurs and other derogatory language against state prisoner did not rise to level of a violation of the Eighth Amendment) (citing *Torres v. County of Oakland*, 758 F.2d 147, 152 (6th Cir. 1985)); *Williams v. Gobles*, No. 99-1701, 2000 WL 571936, at *1 (6th Cir. May 1, 2000) (occasional or sporadic use of racial slurs does not rise to a level of constitutional magnitude; *Bell-Bey v. Mayer*, No. 98-1425, 1999 WL 1021859, at *1 (6th Cir. Nov. 3, 1999) (same); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.") In light of the foregoing, Plaintiff fails to state an Eighth Amendment claim arising from Defendant Signs' alleged use of a racial slur.

IV.     **Misconduct Charge**

Plaintiff claims that he was convicted of a misconduct charge brought by Defendant Signs in violation of his due process rights. Specifically, Plaintiff alleges that the hearing officer, Defendant Frederick, failed to provide him with a copy of the rule violation or the findings of fact to support her determination of guilt. According to Plaintiff, Defendants Stelma and Kent County have a policy or custom of denying inmates written notice of rules violations and findings of fact.

A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin*, 515 U.S. 486-87. Plaintiff does not allege that the misconduct charge or conviction affected the duration of his sentence. Nevertheless, he may be able to raise a due-process challenge to a jail misconduct conviction that results in an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Plaintiff contends that he was placed on lock down for 10 days as a result of the conviction. As previously discussed, a 10-day period of lock down is not an atypical and significant deprivation. Indeed, such restrictions fall short of the 30 days of segregation found to be insufficient in *Sandin*. *See Sandin*, 515 U.S. at 486. Because Plaintiff's misconduct conviction did not result in an extension of the duration of his sentence or a significant, atypical hardship, his due-process claim fails.

V.      **Legal Property**

Plaintiff claims that when he received his legal property that had been packed up by Defendant Signs, some of it was missing, including 24 civil rights complaint forms that Plaintiff

planned to use to file a lawsuit against medical staff at the jail.   Plaintiff further alleges that, because Signs destroyed his legal papers, he could not represent himself in his criminal case and had to plead guilty to possession of drugs with intent to deliver instead of filing his jurisdictional motion to dismiss.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners.  *Id.* at 817.   The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them."  *Id.* at 824-25.   The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts.  *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit.   In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury."  *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.   The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355.  "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc).  Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

While Plaintiff alleges that 24 civil rights complaint forms were missing from his property, he does not allege that he was unable to obtain additional forms for purposes of filing an action against medical staff at the jail.  Indeed, this Court provides free civil rights forms to prisoners upon request.  With regard to his criminal case, a pretrial detainee's right to access to the courts is fully protected by the appointment of counsel in the criminal case.  *Martucci, v. Johnson*, 944 F.2d 291, 295 (6th Cir. 1991) (no constitutional violation where jail provided legal material upon request and inmate was represented by appointed counsel during his criminal case since the constitution only requires an adequate law library or appointed counsel); *United States v. Manthey*, 92 F. App'x 291, 297 (6th Cir. 2004) (as long as a prisoner has the assistance of counsel during a criminal trial, the denial of law library privileges to that prisoner does not violate due process or impair his access to the courts); *see also United States v. Sammons*, 918 F.2d 592, 602 (6th Cir. 1990) (defendant's waiver of right to court-appointed counsel and decision to represent self in defense of criminal prosecution constituted waiver of right of access to law library).  Because Plaintiff was represented by counsel in his criminal case, he was not denied access to the courts.

## VI.    **Retaliation**

Plaintiff claims that Defendant Signs retaliated against him when Signs removed Plaintiff from his cell and moved him to the DRU.  Defendant Signs, who was holding a can of mace, and two other deputies opened Plaintiff's cell door and told him to come out.  Plaintiff alleges,

"There were no supervisors present, therefore giving Deputy D. Signs the mace allowed him to retaliate and to carry out his threats." (*Id.*)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's retaliation claim fails at the first step because he does not allege that he was engaged in protected conducted. Even if he did, Plaintiff does not allege facts supporting his claim of retaliatory animus. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory

motive).  Plaintiff merely alleges the ultimate fact of retaliation.  He has not presented any facts to support his conclusion that Defendant Signs' conduct was retaliatory.  Accordingly, his conclusory allegation fails to state a claim.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:   ___November 16, 2016___        /s/ Robert J. Jonker_____
                                        ROBERT J. JONKER
                                        CHIEF UNITED STATES DISTRICT JUDGE